The State Department of Human Resources ("DHR") appeals from a judgment of the Colbert County District Court awarding DHR $4,729, representing an accrued arrearage of child support owed by R.L.R. ("the father"), the father of M.R. and C.R. ("the children"), but not awarding postjudgment interest on that amount. We reverse and remand with instructions.
The father and D.R.W. ("the mother") were divorced in 1979 by the Franklin County Circuit Court; that court's judgment provided that the mother would have custody of the children and that the father would pay child support to the mother. In 1982, DHR brought a child-support action against the father in the Colbert County Juvenile Court, alleging that DHR had provided public assistance toward the support of the children; contending that the father had a legal duty to support the children; and requesting the juvenile court to direct the father to pay a reasonable sum of reimbursement of the support and maintenance of the children and to enter an order for continuing support. The father was served with DHR's petition, but failed to appear at the hearing on the petition; there is no indication that the juvenile court was made aware of the father's support obligation under the 1979 divorce judgment. The juvenile court entered a default judgment in favor of DHR for $3,731 plus cost, and directed the father to pay child support of $25 per week beginning on July 2, 1982. No appeal was taken from that judgment.
From the scant record before this court, it appears that during the 16 years following the juvenile court's judgment, the *Page 497 
father did not voluntarily[1] make any payments to DHR with respect to either the arrearage or the prospective weekly support obligation. On several occasions since 1982, DHR has attempted to execute upon the juvenile court judgment; however, until 1998, DHR was unsuccessful in obtaining service upon the father.
In 1993, the mother died, and the father filed a petition in the Colbert County Circuit Court seeking custody of the children. The Colbert Circuit Court thereafter entered a judgment awarding custody of the children to the father. Among the factual findings made by the Colbert Circuit Court were the following:
 "[A]lthough [the father] did not continue to pay regular child support to [the mother] pursuant to the Franklin County Divorce Decree, he terminated said regular cash payments to [the mother] because [the mother's] father was using those child-support funds to support his drinking, and instead [the mother] and [the father] agreed that the father would buy the children necessities such as clothes and food, in lieu of said child-support payments directly to the mother, and . . . he also at times gave money directly to [the mother]. [The father] did support [the mother and the children] during this period of time by doing so, and the children verified this through their testimony."
On November 25, 1998, DHR and two persons claiming to be the guardians of the children filed in the Colbert County District Court a "petition for writ of ne exeat," in which they alleged that the father had failed and refused to abide by the terms of the 1982 judgment, resulting in substantial arrearages and interest; that the father was justly indebted to the State; that the father had remained outside Alabama for 14 years to avoid payment of child support; that he was in Alabama temporarily; and that it was likely that he would leave the state pending a hearing. The petition sought, among other things, the entry of a judgment against the father in the amount owed under the 1982 juvenile-court judgment "plus interest accrued thereon as provided by law." The father was served with the petition, and the district court held an ore tenus hearing on the petition.
On February 9, 1999, the district court entered a judgment on the petition. In its judgment, the district court concluded that the principal sum owed by the father was $4,729, apparently failing to take into account the 1997 federal tax offset. However, after referencing the above-quoted portion of the 1993 custody judgment, the district court found that while the father "in fact" owed the State postjudgment interest of $12,725, the court would "waive" the interest if the father paid $4,729 within 60 days because of the possibility that the father "could have interpreted th[e] language [in the 1993 custody judgment] to be a waiver of his child-support obligation ordered" by the juvenile court. DHR's postjudgment motion challenging the interest waiver was denied.
On appeal, DHR contends that the district court was, as a matter of law, without power to remit the postjudgment interest due on the sums payable under the 1982 juvenile-court judgment. The father has not favored this court with a brief. Because the record does not contain a transcript of the proceedings before the district court, we presume that that court's factual findings are correct, and we review its judgment to determine whether that court misapplied the law to those facts. See Ex parte State exrel. Lamon, 702 So.2d 449, 450 (Ala. 1997).
Pursuant to § 38-10-1 et seq., Ala. Code 1975, which section was first enacted in 1979, DHR is authorized to initiate child-support enforcement actions as an *Page 498 
adjunct to its administration of state Aid to Families with Dependent Children (AFDC) benefits. All AFDC recipients are deemed under state law to have assigned to DHR all of their rights to receive child support, up to the amount of aid paid by DHR. Section 38-10-5, Ala. Code 1975. By statute, the payment of aid by DHR creates a debt due and owing to DHR by the parent owing support; however, in cases in which a court has ordered child support incident to a divorce judgment, the debt is limited to the amount specified in that judgment. Section 38-10-6, Ala. Code 1975. Whenever anyone owing a support obligation has failed to provide support to an AFDC recipient, DHR is empowered to initiate civil actions to establish or enforce support obligations; these actions may be brought in the juvenile court, the district court, the circuit court, or the "appropriate federal court." Section 38-10-7, Ala. Code 1975. Thus, we conclude that the juvenile court had subject-matter jurisdiction in 1982 to impose a support obligation upon the father, and that DHR could seek to enforce that judgment within 20 years of its entry. See § 6-2-32, Ala. Code 1975 (statute of limitations concerning actions on judgments).
Under Alabama law, all judgments, other than judgments based upon contract actions, bear interest at the rate of 12 percent per annum. Section 8-8-10, Ala. Code 1975. That statute applies to judgments ordering parties to pay child support, including judgments in favor of DHR:
 "The law in Alabama is clear that an order to pay child support is a final judgment as of the due date and that an arrearage may be collected as any other judgment is collected. Further, the failure to impose interest on the arrearage when interest is properly requested is error."
State Dep't of Human Resources v. McGhee, 634 So.2d 573, 574
(Ala.Civ.App. 1994) (citations omitted). In this present case, the November 25, 1998, petition filed by DHR and the children's alleged custodians properly requested an award of postjudgment interest, and the trial court erred in failing to award such interest.
The District Court of Colbert County appears to have sought to afford the father some relief from a substantial interest burden because the circuit court of that county had previously noted, in its 1993 custody judgment, the father's efforts to support the children. However, the liability of the father to repay DHR under the judgment of the juvenile court with respect to AFDC benefits that were paid to the mother was distinct from his obligation of support under the Franklin County divorce judgment, and the Colbert Circuit Court's custody judgment could not, as a matter of law, supersede the juvenile court's support judgment. See Sharp v. Sharp, 578 So.2d 1320, 1321
(Ala.Civ.App. 1990) (holding that a child-support judgment in favor of the state pursuant to § 38-10-7, Ala. Code 1975, did not supersede the support provisions of an earlier divorce judgment), cited inLamon, 702 So.2d at 451.
The facts of this case closely resemble those of Stateex rel. State Dep't of Human Resources v. Orr, 635 So.2d 1
(Ala.Civ.App. 1993). In Orr, a trial court declined to award postjudgment interest on several child-support arrearages, noting that the arrearages had grown to as much as $25,380, and that the persons charged with the arrearages were "blue-collar wage earners with modest incomes." The trial court further opined that the child-support arrearages amounted to "bad loans," as to which efforts should be focused upon collecting the principal and not the interest, and that to add interest would be "counterproductive and unwise." 635 So.2d at 2-3. This court reversed the trial court's judgment, concluding that the trial court's failure to impose interest on past-due child-support judgments was reversible error. Our comments in that case are equally applicable in this case: *Page 499 
 "This court is mindful of the tremendous burden placed upon trial courts, and their herculean efforts in the exercise of their duties, to enforce orders of child support. This court is aware of the efforts of the trial [judge], as well as other [judges] of the state, in handling a sometimes overwhelming load of cases involving support; however, we have no authority to ignore the statutes or the clear and settled legal precedent."
635 So.2d at 3.
We agree with DHR that the district court was, as a matter of law, without authority to "waive" the imposition of statutorily mandated postjudgment interest on the juvenile court's 1982 support judgment in favor of DHR. Accordingly, we must reverse the judgment of the district court and remand for recalculation of the amounts owed by the father to DHR. On remand, the trial court is instructed to credit the father's payments, including his April 15, 1997, payment of $2,177, toward the principal amount the father owes under the juvenile court's support judgment (see § 8-8-11, Ala. Code 1975, as amended), and to take those payments into account in calculating the amount of postjudgment interest due from the father accruing since the dates of payment.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Yates, Monroe, and Thompson, JJ., concur.
Crawley, J., concurs in the result.
[1] The record reveals that a payment of $2,177 was received by DHR on April 15, 1997, and was credited to the father's child-support liability as a result of a "federal joint tax offset," which we presume to relate to a diversion to DHR of a tax overpayment.